IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IGOR BELYAKOV                        :

                                     :

    v.                               :   Civil Action No. DKC 13-3656

                                     :

HENRY M. JACKSON FOUNDATION          :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are two motions: (1) a motion for summary judgment filed by Defendant Henry M. Jackson Foundation ("Defendant" or the "Foundation") (ECF No. 35); and (2) a cross-motion for summary judgment filed by Plaintiff Igor Belyakov ("Plaintiff") (ECF No. 40).   The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.   For the following reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.

## I.   Background

### A.   Factual Background[1]

This case involves age discrimination and retaliation claims brought by Plaintiff against his prospective employer.

---

[1]   The following facts are uncontroverted, alleged by Plaintiff, or construed in the light most favorable to him.

Plaintiff, a United States citizen of Russian origin, was born on July 13, 1960.  As a result, at all relevant times in this failure-to-hire action, he was over 40 years old.  (ECF No. 40, at 1).

Plaintiff received his medical degree in 1983 and worked at the National Cancer Institute of the National Institutes of Health ("NIH") from 1996 to 2006 as a postdoctoral fellow and a senior staff scientist.  (ECF Nos. 35-2, at 4; 39, at 5; 40-2, at 1).  NIH is part of the U.S. Department of Health and Human Services ("DHHS").  In 2004, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") against NIH and DHHS alleging that he was not promoted due to his national origin.  (ECF Nos. 4 ¶ 8; 35-2, at 4).  He submitted additional EEOC complaints against NIH and DHHS in 2006 and 2010 for failure to promote and failure to hire, respectively.  (ECF No. 35-2, at 4).  From 2006 to 2010, Plaintiff worked for the Midwest Research Institute in Salt Lake City, Utah.  He then worked as a professor at the Michigan Nanotechnology Institute for Medicine and Biological Sciences until January 2013.  (*Id.*).  According to Plaintiff, he was unemployed at the time of the events giving rise to this case.  (ECF No. 4 ¶ 4).

Defendant Foundation is a private, non-profit organization located in Bethesda, Maryland, "that is dedicated to supporting

2

medical research and education programs." (ECF No. 35-2, at 5).
The Foundation "staffs federally sponsored programs for medical
research that are funded through grants or contracts." (*Id.*).
One such federal program "is the HIV/AIDS medical research
program operated within the Division of AIDS ("DAIDS")" at NIH.
(*Id.*). In late October 2012, DAIDS requested that Defendant
hire a Senior Science Adviser – Mucosal Immunology ("SSA") to
support the DAIDS program. (*Id.* at 6). Monica Richardson Hager
served as the hiring manager for the SSA position at the
Foundation, and Whitney Flickinger was assigned to assist Ms.
Hager in filling the SSA position. Foundation employees Naana
Cleland and Marco Schito assisted Ms. Hager and Ms. Flickinger
in interviewing candidates. On November 7, 2012, Ms. Flickinger
created an opening for the SSA position on the Foundation's
online application system and posted the job description to the
Foundation's website. (*Id.*). The posting did not provide a
specific application deadline. (ECF No. 4 ¶ 12; *see* ECF No. 35-
5, at 8). When candidates applied for the SSA position, the
Foundation's online system generated and sent an auto-reply e-
mail to the candidate confirming receipt of the application.
The submitted application was stored in an online database for
later review. Ms. Hager and Ms. Flickinger had access to this
database for the SSA position. The application system neither
generated nor sent notifications to Foundation employees when it

3

received an application for the SSA position.  (ECF No. 35-2, at 7).

On November 14, 2012, Ms. Hager received an e-mail from Mark O'Callahan, the Foundation's Project Director for DAIDS, attaching Dr. Cesar Boggiano's application and stating that "[t]his candidate looks promising for the [SSA] position." (ECF No. 35-5, at 12).  Mr. O'Callahan had received Dr. Boggiano's application materials from Dr. Patricia D'Souza, an NIH employee who would work closely with the individual hired into the SSA position.  (ECF No. 35-2, at 7).  On November 21, Ms. Hager reviewed applications submitted to the online database and rejected a number of applicants because they lacked the requisite experience.  (Id.).  Over the next several days, Ms. Hager screened the remaining applications, identified the top candidates, reviewed these candidates' applications with her colleagues, and asked Ms. Flickinger to conduct screening interviews.  (Id. at 8).  After November 26, Ms. Hager did not return to the online system to review any other application materials for the SSA position.  According to Ms. Hager, "[a]ny applications submitted after November 26, 2012 went into the [online] database where they simply remained without being reviewed." (ECF No. 35-5, at 4).

Ms. Flickinger conducted a phone interview with Dr. Boggiano on November 26.  Between December 6 and December 18,

4

the top four candidates, including Dr. Boggiano, were
interviewed by Foundation employees. (ECF No. 40-34). Ms.
Hager identified Dr. Boggiano as one of the top two candidates
and she arranged additional "meet and greet" interviews for the
two finalists. (ECF No. 35-2, at 8). After meeting with both
candidates on December 27, Dr. D'Souza recommended that the
Foundation hire Dr. Boggiano because "he has worked in the HIV
field, is well qualified in the skill sets I require (mucosal
immunology and innate immunology), knows the key players in the
HIV field and seems highly motivated . . . . I think [Dr.
Boggiano] could contribute to the DAIDS [s]cientific agenda
immediately." (ECF No. 35-5, at 19). Shortly after Ms.
Flickinger checked Dr. Boggiano's references, Ms. Hager extended
an offer of employment to Dr. Boggiano for the SSA position.
Dr. Boggiano verbally accepted the position on January 11, 2013,
and he formally began his employment at the Foundation on
February 4. (ECF No. 35-2, at 9-10). On January 14, Ms.
Flickinger updated the Foundation's online application system to
reflect that a candidate accepted an offer of employment. Dr.
Boggiano's application was placed in "Ready to Hire" status,
while all remaining applicants were placed on "Hold" within the
database. (*Id.* at 9). Once Dr. Boggiano was officially hired
on February 4, the database was updated to reflect his hiring.
This update necessarily rejected all other applicants from

5

further consideration and "assigned them the disposition reason 'Another Applicant was Hired.'" (ECF No. 35-6, at 4).

Plaintiff applied for the SSA position on December 17, 2012 through the Foundation's online application system. (ECF No. 4 ¶ 13). Upon submission, he received an e-mail confirmation from the Foundation stating that "[y]our online application has been successfully submitted" and "[w]e will review your background to determine if your qualifications are commensurate with the posting requirements. If it passes our initial screening, we will contact you." (ECF No. 35-3, at 29). Plaintiff did not speak with anyone about the SSA position before applying in December 2012. (*Id.* at 6). Plaintiff alleges that, in January 2013, the Foundation informed him that he was not selected for the SSA position. (ECF No. 4 ¶ 14). Plaintiff, however, has not produced such an e-mail during discovery, and it is unclear whether the Foundation sends rejection e-mails to applicants who were not selected. (*See* ECF No. 35-3, at 8-9).

### B.  Procedural History

On March 1, 2013, Plaintiff filed an EEOC charge alleging age discrimination and retaliation. In his EEOC charge, Plaintiff asserted:

> In or about December 2012, I applied for a vacant, advertised position with [Defendant]. The position to which I applied was Senior Science Advisor. On February 4, 2013, I received notice that I

> was not selected for the position. I
> believe my denial of hire and non-selection
> was due to my age (52) and in retaliation to
> my filing of previous complaints and whistle
> blowing activities with my former employer,
> [NIH]. As a result of these previous
> actions, I believe I have been subjected to
> continuous retaliation regarding denial of
> any employment opportunities in which NIH is
> affiliated.

(ECF No. 1-1). In response to the charge, Defendant submitted a

"position statement" to the EEOC investigator, asserting that

Plaintiff's application "was received so late in the recruitment

process that it was never even seen by [the] hiring manager"

prior to selection of the successful applicant and that, in any

event, the hiring manager was unaware of Plaintiff's age,

"having never met him," and "did not know anything about [his]

complaints regarding the [NIH] at the time of the hiring

decision — she didn't even know who [Plaintiff] was." (ECF No.

4-5, at 1-2). On September 20, 2013, the EEOC dismissed the

charge and advised Plaintiff of his right to sue. (ECF No. 4-

1).

Plaintiff, proceeding *pro se*, sued Defendant in this court

on December 4, 2013. (ECF No. 1). Plaintiff filed an amended

complaint on December 23. (ECF No. 4). The two-count pleading

alleges: age discrimination in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §

621 *et seq.* (Count I); and retaliation in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e
*et seq.* (Count II).[2]  Defendant filed a motion to dismiss the
amended complaint for failure to state a claim (ECF No. 15),
which the court denied on March 6, 2015 (ECF No. 22).  On August
27, Defendant moved for summary judgment on the claims asserted
in the amended complaint.  (ECF No. 35).  Plaintiff responded
(ECF No. 39), and Defendant replied (ECF No. 41).  Plaintiff
filed a cross-motion for summary judgment (ECF No. 40), which is
fully briefed (ECF Nos. 41; 42).

## II.  Standard of Review for Cross-Motions for Summary Judgment

A motion for summary judgment will be granted only if there
exists no genuine dispute as to any material fact and the moving
party is entitled to judgment as a matter of law.  *See*
Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250
(1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).
Summary judgment is inappropriate if any material factual issue
"may reasonably be resolved in favor of either party." *Liberty
Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports
Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

---

[2] The amended complaint lists Counts I and III.  (ECF No. 4,
at 11-12).  Plaintiff acknowledges that Count III was mislabeled
and should be Count II.  (ECF No. 35-3, at 3).  This memorandum
opinion will refer to Counts I and II.

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). Although *pro se* litigants are to be given some latitude, the above standards apply to everyone. Thus, as courts have recognized repeatedly, even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments. *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D.Md. 2011) (citing cases).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the

familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., Federal Practice & Procedure § 2720 (3d ed. 1998).

## III. Analysis

The two-count amended complaint alleges that Defendant discriminated against Plaintiff by failing to hire him due to his age and in retaliation for earlier EEOC complaints filed against NIH. Defendant instead hired Dr. Boggiano, who is younger.

### A.   ADEA Discrimination Claim (Count I)

The ADEA prohibits employers from discriminating against employees or prospective employees because of an individual's age. 29 U.S.C. § 623(a). To survive a motion for summary judgment, a plaintiff must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision; or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that "the employer's proffered permissible reason for taking an

adverse employment action is actually a pretext for [discrimination]." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (citing *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). Here, Plaintiff must rely on the *McDonnell Douglas* framework because he offers no direct evidence.

Under the *McDonnell Douglas* framework, once the plaintiff meets his initial burden of establishing a *prima facie* case for discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted). To establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) he was in the age group protected by the ADEA; (2) he

was qualified for the job for which the employer was seeking
applicants; (3) he was rejected for the job despite being
qualified; and (4) he was rejected for the position under
circumstances giving rise to an inference of unlawful
discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir.
1998) (citations omitted); *see Burdine*, 450 U.S. at 253, 253
n.6.

The ADEA's protections apply to individuals at least 40
years of age, 29 U.S.C. § 631(a), and do not permit a mixed-
motives age discrimination claim. *Gross v. FBL Fin. Servs.,
Inc.*, 557 U.S. 167, 175 (2009). Instead, Plaintiff must
establish "that age was the 'but-for' cause of the employer's
adverse action." *Id.* at 177 (citations omitted). In the
absence of any direct evidence of age discrimination, "the
plaintiff in a failure-to-hire suit is generally required to
show that the employer took adverse action against an applicant
who was qualified for employment, 'under circumstances which
give rise to an inference of unlawful discrimination.'" *Krpan
v. Bd. of Educ. of Howard Cty.*, No. ELH-12-2789, 2013 WL
4400475, at *11 (D.Md. Aug. 15, 2013) (quoting *Burdine*, 450 U.S.
at 253). In its motion for summary judgment, Defendant
challenges whether Plaintiff can satisfy the fourth prong of the
*prima facie* case. In the alternative, Defendant argues that it
has legitimate, nondiscriminatory reasons for not selecting

12

Plaintiff for the SSA position and that there is no evidence of pretext to support Plaintiff's claim of discrimination.

Defendant is entitled to summary judgment on Plaintiff's age discrimination claim. Plaintiff cannot establish but-for causation because the evidence establishes that the decision to hire Dr. Boggiano was made before anyone involved in the selection process knew that Plaintiff had applied or had any information about his age. *See Belyakov v. Med. Sci. & Computing*, 86 F.Supp.3d 430, 442 (D.Md. 2015). The uncontroverted evidence shows that Defendant's decisionmakers during the hiring process lacked knowledge that Plaintiff applied for the position, thereby removing any possible inference of discrimination. Mr. O'Callahan, the Project Director for DAIDS who convened the team to fill the SSA position, declared, "Until I learned of [Plaintiff's EEOC] charge in mid-February 2013, I had never heard of [Plaintiff] and never discussed [him] with anyone for any purpose." (ECF No. 35-4, at 4). Similarly, Ms. Hager, the hiring manager for the SSA position, stated, "After learning of [Plaintiff's EEOC] charge in mid-February 2013, I also learned for the first time that [Plaintiff] had submitted an application on December 17, 2012 for the SSA position. Because [he] applied . . . after November 26, 2012, I never reviewed his resume and never knew that he had applied." (ECF No. 35-5, at 5). Moreover, Ms.

Hager "had never heard of Plaintiff prior to learning about [his February 2013 EEOC charge]." (*Id.*).  Ms. Flickinger, a recruiter assigned to assist Ms. Hager in hiring for the SSA position, affirmed that until "mid-February 2013, . . . I had never heard of [Plaintiff] and did not know he had ever applied for the SSA position." (ECF No. 35-6, at 4).

Even in cases in which the employer knew that the plaintiff applied for an open position, the plaintiff cannot establish a *prima facie* case of discrimination unless he can show that the employer also knew the plaintiff's age. *See Gladden v. McHugh*, No. PJM-10-1793, 2011 WL 2791139, at *6 (D.Md. July 13, 2011) (noting that to survive summary judgment, "the protected status must have actually played a role in the employer's decision-making process" (citing *Hill*, 354 F.3d at 286)), *aff'd sub nom. Gladden v. U.S. Dep't of the Army*, 469 F.App'x 221 (4th Cir. 2012).  It follows, then, that lack of knowledge about the application itself cannot support an inference of discrimination on the basis of age.  *Id.* ("[T]here obviously must be some indication that the deciding officials knew of the applicant's status as a protected individual.").

Plaintiff argues that Defendant's employees reviewed his application and took note of his age, which can be inferred from the dates on his CV, because he received an e-mail response confirming receipt of his application.  (ECF Nos. 39, at 2, 5;

14

40, at 3, 17). This e-mail noted that Plaintiff's "online application has been successfully submitted" and Defendant "will review your background to determine if your qualifications are commensurate with the posting requirements. If it passes our initial screening, we will contact you." (ECF No. 35-3, at 29). Absent more, an automated e-mail reply is insufficient to show that the hiring team viewed Plaintiff's application or recognized his protected status. Put simply, there is no evidence that any decisionmaker or other employee at the Foundation was aware that Plaintiff applied for the SSA position, or discussed his age, or acted upon such information with a discriminatory animus. *See Merritt*, 601 F.3d at 300 ("It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated [evidence of a subordinate's intent] is substantially reduced."). Nor is there any evidence that any NIH employee with influence over Defendant's hiring process had knowledge that Plaintiff applied for the position, or was aware of his age, when it approved of Dr. Boggiano's selection. Rather, the undisputed facts are that Ms. Hager completed screening applications for the SSA position by November 26, 2012. (ECF No. 35-5, at 4-6). After November 26, she did not review any additional applications for the SSA position and was not notified by the application database when

15

new applications were received.  (*Id.*).  Plaintiff did not apply for the SSA position until December 17, three weeks after Ms. Hager stopped reviewing new applications.  By that time, the hiring decisionmakers had interviewed four finalists and narrowed their choice to two candidates, including Dr. Boggiano. (*Id.* at 4).  Although Plaintiff has likely satisfied the first three prongs of a *prima facie* case for age discrimination under the *McDonnell Douglas* framework, he has not provided evidence showing that he was rejected for the SSA position under circumstances giving rise to an inference of unlawful discrimination.  As a result, his *prima facie* case fails.

In his cross-motion for summary judgment, Plaintiff relies on an affidavit of an expert witness, Dr. Oleg Kuzmenok, to argue that there is evidence to establish discriminatory intent based on Plaintiff's superior credentials.  (ECF No. 40, at 11-13; *see* ECF No. 40-30).  In his affidavit, Dr. Kuzmenok states that "it is very clear that [Plaintiff] is substantially more qualified for a [SSA] position than Dr. Boggiano.  I do not find the reasons given by [Defendant] for selecting Dr. Boggiano to this position particularly credible."  (ECF No. 40-30, at 3). Plaintiff argues that Dr. Kuzmenok's conclusion regarding the qualifications of Plaintiff vis-à-vis Dr. Boggiano is evidence of Defendant's discriminatory intent.

In *Holcomb*[ *v. Powell*, 433 F.3d 889 (D.C. Cir. 2006)], the United States Court of Appeals for the District of Columbia Circuit explained that "a factfinder could infer discrimination if the evidence showed a reasonable employer would have found the plaintiff significantly better qualified for the job but nevertheless failed to offer the position to [him.]" *Id.* at 897. This consideration is typically implicated where an employer directly compares the qualifications of two candidates, *see, e.g., id.* at 896-97, or uses subjective criteria to justify hiring one candidate over another, which can be used to mask discrimination in some cases, *see, e.g., Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 & n.10, 1298 (D.C. Cir. 1998).

*Belyakov*, 86 F.Supp.3d at 443. Here, however, Defendant's decisionmakers did not know that Plaintiff had applied for the SSA position, and thus did not compare Plaintiff's qualifications to those of the finalists.

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case for age discrimination, he nevertheless cannot rebut as pretextual Defendant's legitimate, nondiscriminatory reason for hiring Dr. Boggiano – that the hiring decisionmakers were unaware of Plaintiff's application, and that his application was treated the same as all other applicants who responded to the job posting after November 26. (*See* ECF No. 35-2, at 18 n.8). Critically, not one of Defendant's employees tasked with filling the SSA position knew that Plaintiff applied until he filed his February 2013 EEOC complaint that led to this

17

action.   Throughout the selection process, these employees never learned of Plaintiff's application, screened Plaintiff's resume, discussed Plaintiff or his qualifications, or even had heard of Plaintiff.   Beyond offering mere speculation and inference, Plaintiff concedes that he has no evidence to the contrary. (*See* ECF No. 35-3, at 10-12, 18).[3]   He provides no evidence to refute the fact that the hiring decisionmakers at the Foundation did not evaluate or screen applicants who applied after November 26, and thus never knew that Plaintiff had applied for the position, let alone his age, by the time Defendant selected Dr. Boggiano in January 2013.   *See Belyakov*, 86 F.Supp.3d at 442. Accordingly, Plaintiff cannot show that Defendant's stated reason for his non-selection "was false, *and* that discrimination was the real reason."   *Adams v. Trustees of the Univ. of N.C.-*

---

[3]   Plaintiff attempts to cast doubt on the credibility of Defendant's stated explanation, evidence, and employee declarations.   He contends that Defendant's SSA application data – compiled and shared during discovery as a spreadsheet of information culled from the online database – is inconsistent, contradictory, and in conflict with the record.   (ECF Nos. 39, at 7-9; 40, at 19-20).   Plaintiff's argument, however, does not create any genuine issue of material fact, as Ms. Flickinger's uncontroverted declarations show that she did not update Defendant's applicant tracking system at each step in the hiring process.   (*See* ECF No. 35-6, at 4).   As a result, "the applicant tracking system reflects the date on which Ms. Flickinger entered [] information into the system and is not intended to be a real-time account" of the recruitment and hiring process. (ECF No. 41, at 6).   Moreover, Plaintiff provides no evidence to challenge whether the hiring decisionmakers ceased reviewing SSA applications on November 26, 2012.

*Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Plaintiff's case is based entirely on the fact that he is older than Dr. Boggiano and his belief that he is more qualified than Dr. Boggiano. (*See, e.g.*, ECF No. 35-3, at 13-14). This, without more, does not create any genuine issue of material fact. The uncontroverted evidence shows that Defendant's decisionmakers were unaware of Plaintiff's application – and, by extension, his age – during the SSA hiring process. As a result, Plaintiff can establish neither circumstances giving rise to an inference of unlawful discrimination nor that age was the but-for cause of his non-selection. Defendant is entitled to summary judgment on the ADEA claim in Count I.

### B. Title VII Retaliation Claim (Count II)

Plaintiff asserts that he was retaliated against in violation of Title VII based on his non-selection for the SSA position. Title VII prohibits retaliation by the employer against employees who engage in a protected activity. 42 U.S.C. § 2000e-2(a). Protected activity includes opposing "unlawful employment practice[s] [under] this subchapter" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in . . . [a Title VII] investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of

19

retaliation under Title VII, a plaintiff must show that: (1) he engaged in a protected activity; (2) an adverse employment action was taken against him; and (3) the protected activity was causally connected to the adverse action. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410 (4th Cir. 2013); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Again, because Plaintiff presents no direct evidence of retaliation, his retaliation claim will be analyzed under the *McDonnell Douglas* framework. *See Staley v. Gruenberg*, 575 F.App'x. 153, 155 (4th Cir. 2014). Here, Defendant does not dispute that the first two prongs are met. Plaintiff engaged in protected activity by filing EEOC complaints against NIH and DHHS in the years prior to responding to Defendant's job positing. And Defendant informed Plaintiff of his non-selection for the SSA position in January 2013, which constitutes an adverse employment action. (ECF No. 4 ¶ 14). Defendant challenges whether Plaintiff can establish the third prong – a causal connection – due to the decisionmakers' lack of knowledge concerning both Plaintiff's application and his earlier protected activity. (ECF No. 35-2, at 19).

A causal connection "exists where [an] employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (citation omitted). In addition,

because "an employer cannot take action because of a factor of
which it is unaware, the employer's knowledge that the plaintiff
engaged in a protected activity is absolutely necessary to
establish the third element of the prima facie case." *Smith v.
Vilsack*, 832 F.Supp.2d 573, 586 (D.Md. 2011) (citations and
internal quotation marks omitted).   Here, the uncontroverted
evidence shows that Ms. Hager, Ms. Flickinger, and their
colleagues at the Foundation did not know that Plaintiff had
applied for the SSA position because they ceased checking the
online application database on November 26, 2012.   Moreover, Ms.
Hager, Ms. Flickinger, and Mr. O'Callahan never heard of
Plaintiff before he filed his February 2013 EEOC charge.
Plaintiff cannot point to any evidence that raises a genuine
issue of material fact about the decisionmakers' awareness
concerning both Plaintiff's SSA application and his earlier EEOC
complaints.   Even so, knowledge of an applicant's prior
protected activity alone is insufficient to establish causation
for the purposes of retaliation. *Gibson v. Old Town Trolley
Tours of Washington, D.C., Inc.*, 160 F.3d 177, 182 (4th Cir.
1998) (citations omitted).   There must be evidence that
Defendant was motivated in some way by Plaintiff's protected
activity to take adverse employment action.   *See id.*   Here,
Plaintiff presents no such evidence, and he cannot create a
genuine issue of material fact through mere speculation or the

building of inference upon inference. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

To the extent that Plaintiff argues that NIH, a DHHS agency, was at least institutionally aware of his prior EEOC complaints and influenced Defendant's hiring process, his claim fails because he presents no evidence that NIH was ever aware he was interested in or applied for the SSA position. *See Belyakov*, 86 F.Supp.3d at 444; (ECF No. 40, at 27-28). Plaintiff is unable to identify any NIH personnel who shared information about his prior protected activity with Foundation employees. (*See* ECF No. 35-3, at 17-18). Accordingly, there can be no causal connection between Plaintiff's prior protected activity – that is, his previously-filed EEOC complaints against NIH – and Defendant's failure to select Plaintiff for the SSA position.

It also bears repeating that, as explained above, Defendant provides legitimate, nondiscriminatory reasons for the challenged actions. As Ms. Hager and her colleagues moved forward in the SSA hiring process to the interview stage, they ceased checking the online database and reviewing new applications. As a result, Defendant's employees who took part in the SSA hiring process had no knowledge of Plaintiff's application, and all applications that were received after November 26 were treated the same. As with his age

discrimination claim, Plaintiff fails to provide evidence - or even a forecast of evidence - that these reasons are pretext. The evidence does not support a finding of retaliation, and Defendant is entitled to summary judgment on that claim.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
